Respondent censured.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RUFUS DURANT, Appellant.

First Department, March 24, 1977

*Richard A. Greenberg* of counsel *(William E. Hellerstein* and *William J. Gallagher,* attorneys), for appellant.

*Alan Seth Adolph* of counsel *(Jacob Apuzzo* with him on the brief; *Mario Merola, District Attorney),* for respondent.

*Thomas P. Dorsey* of counsel *(Samuel A. Hirshowitz* and *Anne Marsha Tannenbaum* with him on the brief; *Louis J. Lefkowitz, Attorney-General),* for the State of New York.

MARKEWICH, J. In 1964, defendant-appellant was indicted in Bronx County for murder. Having been found incapable of standing trial because of mental disability, he was committed to a State institution for such unfortunate persons. In 1974, he was returned to court and, after a bench trial, was found not guilty by reason of insanity (Penal Law, § 30.05), and committed to the custody of the Commissioner of Mental Hygiene pursuant to CPL 330.20, subd 1. In 1976 he made a *pro se* application, subject of this appeal, for his release, and here commenced an incredible series of difficulties leading to this decision, and arising out of failure to heed applicable statutes and procedures.

Though the Mental Health Information Service is now in its 12th year of existence (L 1964, ch 738, eff Sept. 1, 1965), carrying out its functions as ombudsman for those confined in mental institutions, the nature and extent of its services are

not as well known as they should be, particularly to public officials who might well use them. (See section 29.09 of the Mental Hygiene Law, implemented by the appropriate Rules of First Judicial Department: 22 NYCRR 622.1 *et seq.,* particularly as pertinent here, 622.2 [d].) For further description see monograph, "Judicial Responsibility Concerning Hospitalization of the Mentally Ill" Publications Committee, Association of Supreme Court Justices, State of New York; also German and Singer: "Punishing the Not Guilty", 29 Rutgers L Rev 1011. Section 29.09 (subd [b], par 3) of the Mental Hygiene Law requires the service to render assistance to a patient "in any case before a court." Each of the four Judicial Departments has its own service, and its own rules: First, 22 NYCRR Part 622; Second, Part 694; Third, Part 823; Fourth, Part 1023; generally [not here applicable], 606.1 and 622.10. The duties of the director of the service in this Department are spelled out in 22 NYCRR 622.2 (c) (1) (i-vii) and in (d), the last-cited subdivision requiring that if the "patient does not obtain counsel of his own choosing, he shall be represented by the * * * Service." The service has performed well in this Judicial Department, particularly in the area of periodic judicial review of confinement. But, when this appellant decided to sue out his *pro se* application for release under CPL 330.20 (subd 5), apparently he did not know that, under subdivision 1, he was "entitled to the assistance of the mental health information service." The application was made by appellant, as subdivision 5 requires, "to the court by which he was committed," i.e., Supreme Court, Bronx. There is no statutory requirement that, on such an application being received, the court in which it was made returnable must notify the service. Courts and mental institutions have only a moral obligation to notify the service in such a situation, and this obligation, as here, is not always honored. Not having been advised, the service remained ignorant of the application.

In Bronx County, the application was referred to the committing Justice in Trial Term who, instead of proceeding as required by CPL 330.20, or calling in the service, denied the application for release because "it appears from the petitioner's own statement that his treating doctor considers the petitioner a dangerous person, not ready for release." The court did grant "leave to renew by such counsel to be appointed by the Mental Health Information Service." Even at this stage, with specific mention of the service having been made, no one at the court thought to notify the service, even

by a telephone call, that its expertise was needed. The difficulties were not yet over. By CPL 330.20 (subd 3) the proceeding for release is deemed to be a civil one, and appeal from the denial finally disposing of the application would lie as of right. Instead, appellant applied here for permission to appeal as though the appeal were from denial of a postconviction application, and for appointment of a lawyer. Both applications were granted and the Legal Aid Society designated to conduct the appeal. The papers had finally arrived in the same building wherein the service is housed, and, for the first time, the service was advised of the matter and immediately expressed willingness to do what it is meant to do. However, there having been counsel assigned, the service could not act (22 NYCRR 622.2 [d]). Finally, almost a year after institution of the appeal, it is high time for due process, as provided by statute, to be invoked. The service should be designated as counsel for the appellant, to take over from the overburdened Legal Aid Society; simultaneously, the society should be discharged upon this substitution, with the thanks of this court. The application should be remanded for hearing with all due speed as provided by CPL 330.20, with permission to the service to proceed *ab initio,* if so advised, by amended or new application. To the end that all of this may be accomplished, a copy of this decision and the order to be settled hereon shall be furnished to the service by the clerk of this court.

But, finally, if anything is to be learned from this sequence of errors, and to obviate any repetition of these unfortunate events, one further step should be taken. Each institution at which a patient or inmate may sue out a CPL 330.20 (subd 5) application for release should be required to notify forthwith the Mental Health Information Service, in the Judicial Department where the application is returnable, of that fact. Each *court in which* such an application is returnable should have a concomitant statutory obligation. It is essential that this be done by enactment of statute and not by regulation since each of the four Judicial Departments has its own set of rules, each differing in some degree from the others. Parenthetically, we observe that, since mental institutions and committing courts are often not in the same Judicial Department, it might be helpful to institute, whether by statute or agreement, uniform rules in all the Judicial Departments. We call upon the Law Revision Commission to institute a study of the necessary legislation.

Accordingly, the order of Supreme Court, Bronx County (BLOUSTEIN, J.), entered February 18, 1976, should be reversed, on the law, and the matter remanded to Supreme Court, Bronx County, for further proceedings in accordance with the foregoing, without costs.

KUPFERMAN, MURPHY, SILVERMAN and YESAWICH, JJ., concur.

Order, Supreme Court, Bronx County, entered on February 18, 1976, unanimously reversed, on the law, and the matter remanded to Supreme Court, Bronx County, for further proceedings in accordance with the opinion of this court, without costs and without disbursements.